Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6717 | **DATE** | 6/26/2001 |
| **CASE TITLE** | Sherry Bolling vs. Larry G. Massanari | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Cross-motions for summary judgment are denied. This action is remanded for further proceedings consistent with this order. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUN 27 2001 | |
| | Notified counsel by telephone. | | date docketed | 19 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 JUN 26 PM 2:28 | | |
| SLB | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHERRY BOLLING, for the Minor Child, )
MARCEL HARRIS, )
                                            )
           Plaintiff, )
                                            )          00 C 6717
            v. )
                                            )          Judge George W. Lindberg
LARRY G. MASSANARI,[1] )
Acting Commissioner of Social Security, )
                                            )
           Defendant. )

**MEMORANDUM OPINION AND ORDER**

Sherry Bolling appeals to this court pursuant to 42 U.S.C. § 1382c(a)(3) on behalf of minor Marcel Harris, from a final decision of the Commissioner of Social Security denying her claim for Child's Supplemental Security Income benefits. The parties have filed cross-motions for summary judgment. For the reasons stated below, both motions are denied, and the case is remanded for further proceedings consistent with this order.

I.    **STATEMENT OF FACTS**

Plaintiff filed an application for Child's SSI benefits on behalf of her stepson and ward Harris on April 1, 1996. She alleged that as of June 13, 1993, Harris had been disabled due to hyperactivity and behavioral problems. The Social Security Administration denied the initial claim initially on June 26, 1996, and on reconsideration on June 3, 1997.[2] On August 13, 1998, a

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), the court has substituted Larry G. Massanari for Kenneth S. Apfel as the named defendant.

[2] Although plaintiff failed to file her request for reconsideration of the initial denial within sixty days following the denial as required by 20 C.F.R. § 404.909, the Social Security



hearing on plaintiff's claim was held before Administrative Law Judge Alfred Burton. The ALJ, in a written decision dated September 25, 1998, found that Harris was not disabled. Plaintiff requested review of this decision by the Appeals Council. The Appeals Council denied review on August 28, 2000. Upon this denial, the ALJ's decision became the final decision of the Commission. Plaintiff then filed this action for judicial review, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Harris was born on May 30, 1983, and was fifteen years old at the time of the administrative hearing. He has never worked. In 1995, Harris began experiencing behavioral problems following the death of his grandmother, who had been his primary care giver since his mother died in 1986. After his grandmother's death, Harris lived with plaintiff, who was his stepmother and eventually became his legal guardian. Harris developed a history of running away from home. He had problems relating to his peers, resulting in a suspension from school.

Harris was diagnosed with an adjustment disorder by Cheryl Seifert, Ph.D., in March 1996, and by psychiatrist David Benson in May 1996. In June 1996, Harris was admitted to Hartgrove Hospital for a week for psychiatric treatment following an incident at school in which Harris assaulted another boy. Upon his discharge from Hartgrove Hospital, Harris was transferred to the outpatient program for adolescents at Tinley Park Mental Health Center.

On June 30, 1996, Harris was hit by a car and broke his leg. After he had surgery on the leg, Harris became more uncooperative and aggressive. While in the hospital, Harris stated that he wanted to go home, and threatened to stand on his broken leg in an effort to secure his release.

---

Administration proceeded without objection and does not now object to the lateness of the filing. Thus, that issue is waived.

2

He then was admitted to the adolescent psychiatric unit at Christ Hospital and diagnosed with adjustment reaction with disturbance of mood and conduct. At that time, Harris was medicated with Risperdal. Harris was discharged on July 23, 1996.

In April 1997, Harris was evaluated by psychiatrist Charles Fox. Harris reported that he heard voices in his head. Dr. Fox's mental status examination showed Harris to have a mildly depressed affect, but found that he was oriented to person, place, and time. Harris displayed fair memory, no looseness of associations, no bizarre associations or behavior, and no pressure of speech. Dr. Fox diagnosed an oppositional defiant disorder and possible schizophrenia based on Harris' statements.

In August 1997, Harris began receiving outpatient treatment at North West Chicago Treatment Program. At the time of his admission to the program, Harris was alert and oriented to person, place, and time. He denied any visual or auditory hallucinations. Harris had a low frustration tolerance. Harris' medication was changed to Ritalin. Progress notes through April 1998 indicated that Harris was taking his medication, and doing well in school and at home with no problems.

As for Harris' performance in school, an April 1996 evaluation by Harris' seventh grade teacher states that Harris had displayed inappropriate aggressive behavior at the beginning of the school year, but had improved over the prior few months. The teacher indicated that Harris had no problem functioning in relation to others in class, concentrating, working independently, or understanding and completing assignments. A June 1998 report from Harris' eighth grade teacher indicates that Harris understood the material covered in class, although he did not always complete his assignments. At that time, according to the report, Harris did not exhibit aggressive

or unusual behavior, and got along with his peers.

Aside from the injuries Harris sustained as a result of his June 1996 accident, his only other physical problem reflected in the record is an eye condition. Specifically, in April 1996, Harris was diagnosed with retinitis pigmentosa and myopia. At that time, his corrected vision measured 20/60 in each eye.

At the hearing, plaintiff testified that Harris has behavioral problems and retinitis pigmentosa. She stated that his behavioral problems increased after he was hit by a car; his physical injuries as a result of that accident included a traumatic brain injury, several knocked-out teeth, and a broken leg. Plaintiff stated that Harris had received special education services in the past. She reported that Harris received mostly C and D grades, and occasionally a B, but never had to repeat a grade. She stated that Harris had participated in an Upward Bound program, but otherwise did not participate in any clubs or organizations.

Harris testified at the administrative hearing that he likes to play video games and basketball. He stated that he had no problems getting along with his friends. He reported that he was able to care for his own personal needs, and could perform small tasks such as fixing a sandwich. He stated that he took his medication daily. He denied having any vision problems, and denied having any physical problems other than some occasional leg swelling after playing basketball for a prolonged time.

As part of her request for review by the Appeals Council, plaintiff submitted information regarding Harris' 1999 school attendance and his 1999 and 2000 medical treatment. These records indicate that Harris was hospitalized at Hartgrove Hospital again in April 2000. The Hartgrove records reference Harris' expulsion from school in approximately January 2000

following an incident in which he drew a knife on another student. Finally, a November 1999 functional vision assessment notes that Harris had poor depth perception and reports that Harris had complained of poor night vision. The Appeals Council considered these records, and denied plaintiff's request to review the ALJ's decision.

## II. DISCUSSION

### A. Legal Framework

The decision of the Commissioner must be upheld if it is supported by substantial evidence, unless the decision applies incorrect law. Nelson v. Apfel, 131 F.3d 1228, 1234 (7th Cir. 1997). As an initial matter, then, the court must decide whether the ALJ applied the correct legal standard of disability, given recent changes in the law. In August 1996, after plaintiff filed her initial benefits application but before the ALJ's decision, legislation went into effect that established a new standard for childhood disability. See Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105. In February 1997, the Social Security Administration published interim final rules governing the application of the 1996 legislation. See 62 Fed. Reg. 6408. In September 2000, the Administration published final rules, which became effective on January 2, 2001. See 65 Fed. Reg. 54,747.

The final rules provide that, "[w]ith respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision." 65 Fed. Reg. 54,747, 54,751. The 1996 Act, in turn, provides that its new standard for evaluating childhood disability claims applies to all cases that had not been finally adjudicated as of the August 22, 1996 effective date. 42 U.S.C. § 1382c note. Since this

5

case was not finally adjudicated as of August 22, 1996, the applicable legal standard is the standard established in the 1996 Act, as implemented through the interim final rules in effect as of the date of the ALJ's decision. The ALJ used the interim final rules to decide this case, thus applying the correct legal standard.

Under the 1996 Act, a child is considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The interim final rules define the term "marked and severe functional limitations" as "a level of severity that meets, medically equals, or functionally equals" the severity of a listing in the Listing of Impairments in appendix 1 of subpart P of part 404. 20 C.F.R. § 416.902. To determine whether a child is disabled, the ALJ must use a three-step inquiry. First, the child must be unemployed. 20 C.F.R. § 416.924(a). Second, his impairment or combination of impairments must be "severe." Id. Third, his impairment or combination of impairments must meet, medically equal, or functionally equal the severity of a listed impairment. Id.

In his ruling, the ALJ initially found that there was no evidence that Harris had ever engaged in substantial gainful activity. Next, he found that the medical evidence established that Harris has an oppositional defiant disorder, an adjustment disorder, and had a fractured left leg. He found that Harris is more than minimally affected by his mental problems. The ALJ concluded that Harris' broken leg had healed, and caused no significant residual problems. The ALJ further concluded that Harris' personal and school problems stemmed from his psychological impairment, rather than from a problem with his vision. He found, however, that

6

Harris' psychological impairments did not medically meet or equal, or functionally equal, the requirements of a listed impairment.

In determining that Harris' psychological impairment did not medically meet or equal the requirements of a listed impairment, the ALJ considered Harris' medical records and the testimony of Harris and plaintiff. He noted that Harris had experienced many losses, including the deaths of his mother and grandmother. He detailed the history of Harris' psychiatric treatment, as well as plaintiff's complaints regarding Harris' behavior. However, he noted that medical records from Northwest Chicago Treatment Program through April 1998, as well as Harris' testimony, indicated that Harris was taking Ritalin and doing well.

In determining that Harris' psychological impairment did not functionally equal a listed impairment, the ALJ evaluated Harris' impairment under broad functional limitations standards, and reviewed Harris' ability to function in the areas of cognition and communication, motor functioning, social, personal, concentration, persistence, and pace. The ALJ acknowledged that Harris has a history of significant limitations in social functioning, and that medication did not completely control Harris' tendencies toward distraction and aggression. However, the ALJ noted that Harris had good hygiene and was able to care for his personal needs, he was in regular classes at school, and was able to understand and complete assignments. The ALJ found persuasive the April 1998 progress notes of Dr. P. Panom, of the North West Chicago Treatment Program, which stated that Harris was doing well and that his condition was controlled by medication. Accordingly, the ALJ denied plaintiff's claim for benefits on behalf of Harris.

**B.    42 U.S.C. § 405(g), Sentence Four**

Under sentence four of 42 U.S.C. § 405(g), this court's review of the ALJ's decision is

7

limited to a determination of whether his decision was supported by substantial evidence. Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Maggard v. Apfel, 167 F.3d 376, 379 (7th Cir. 1999), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). To determine whether the ALJ's decision was supported by substantial evidence, "we review the entire record; however, we do not substitute our judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." Id., quoting Brewer v. Chater, 103 F.3d 1384, 1390 (7th Cir. 1997). The additional evidence submitted to the Appeals Council after the ALJ's decision is not part of the record for the purpose of our review under 42 U.S.C. § 405(g), sentence four. See Eads v. Secretary of Dept. of Health and Human Servs., 983 F.2d 815, 817 (7th Cir. 1993) (where Appeals Council denies review, evidence that was not part of record before ALJ cannot be considered on judicial review).

Plaintiff claims that the ALJ erred by crediting Dr. Panom's April 1998 conclusion that Harris was doing well and that his condition was controlled by medication, while disregarding Dr. Panom's August 1997 summary of Harris' problems as including a Global Assessment of Functioning ("GAF") of 45. Plaintiff characterizes the ALJ's decision as improperly substituting his opinion for that of a medical practitioner.

Defendant responds that Dr. Panom's GAF is not entitled to much weight, because it was poorly supported by the record. As defendant notes, a GAF of 45 would require a finding of serious symptoms such as suicidal ideation, severe obsessional rituals, and frequent shoplifting; or that Harris had a serious impairment in social, occupational, or school functioning, such as having no friends, or being unable to attend school. See American Psychiatric Ass'n, DSM-IV-

8

TR 32-34 (2000). The record before the ALJ supports a finding that Harris did not experience these kinds of severe problems. While Harris certainly exhibited behavioral problems and had had difficulty relating to his peers, he had been able to remain in regular classes at school, and both he and plaintiff reported that Harris had friends. An April 1997 psychiatric evaluation by Dr. Charles Fox notes that Harris denied having any suicidal ideation. Most importantly, documents prepared by Dr. Panom appear inconsistent with his assignment of a GAF of 45 to Harris. The same August 1997 outpatient admission summary that notes the GAF also notes that Harris had denied suicidal ideations, and Dr. Panom's April 1998 progress notes state that Harris was doing well at school and home, and was having no problems. Accordingly, the court cannot say that the ALJ's failure to comment on the GAF of 45, and his conclusion that Harris' psychiatric problems did not rise to the level of a legal disability, were not supported by substantial evidence.

Plaintiff also argues that she did not validly waive her right to counsel at the administrative hearing. A claimant has a statutory right to counsel at a disability hearing, which she may waive if properly informed of it. Thompson v. Sullivan, 933 F.2d 581, 584 (7th Cir. 1991); 42 U.S.C. § 406. To ensure a waiver of counsel, the ALJ must explain to the claimant the way an attorney can aid in the proceedings, the availability of legal representation that is free or paid through a contingency arrangement, and the cap on attorney fees of twenty-five percent of past due benefits plus required court approval of the fees. Thompson, 933 F.2d at 584.

At the August 13, 1998 hearing, plaintiff waived her right to counsel both orally and in writing. Before plaintiff waived this right, the June 3, 1997 notice from the Social Security Administration denying plaintiff's request for reconsideration of the initial determination had

9

informed plaintiff of her right to counsel, and the availability of free legal services and contingency fee arrangements. This notice states that the Administration must approve the legal fee if plaintiff hired counsel. In addition, a June 8, 1998 Memorandum Order by the ALJ had noted that plaintiff was advised of her right to counsel, the benefits of representation, and that a list of organizations providing representation had been furnished to her. Finally, at the August 13, 1998 hearing, the ALJ again advised plaintiff of her right to counsel and the availability of free legal services, and informed her that it is beneficial to be represented. What none of these notices contained, however, was an explanation that attorney fees would be capped at twenty-five percent of the past due benefits. Accordingly, plaintiff's waiver was not valid.

Despite the ALJ's inadequate notification to plaintiff of her right to counsel, a case need not be remanded for that reason unless the ALJ also failed to develop a full and fair record. Binion v. Shalala, 13 F.3d 243, 245 (7th Cir. 1994). The ALJ's obligation is met if the ALJ "probes the claimant for possible disabilities and uncovers all of the relevant evidence." Id. Where a claimant is not represented by counsel, the ALJ has a duty "scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts." Id., quoting Smith v. Secretary of Health, Education and Welfare, 587 F.2d 857, 860 (7th Cir. 1978).

Plaintiff contends that the ALJ failed to fully develop the record by not obtaining further medical expert opinions, specifically in the areas of psychiatry and ophthalmology. Plaintiff's argument is misplaced. The ALJ obtained, among other types of information, a May 1996 psychiatric evaluation by Dr. David Benson; a June 1996 functional assessment by D. Hudspeth, Psy.D., and Dr. Deborah Albright; July 1996 evaluations done at Christ Hospital; an April 1997 psychiatric evaluation by Dr. Charles Fox; and an August 1997 outpatient admission summary

and subsequent progress notes of Harris' treating psychiatrist, Dr. Panom, including the April 1998 notes that indicated that Harris was doing well. At the hearing, the ALJ asked questions regarding Harris' hospitalization at Hartgrove, his school performance, his activities, his ability to relate to others, his ability to care for himself, and his medication. As for Harris' vision problems, the ALJ questioned Harris as to the effect his vision had on his activities such as playing video games and sports, receiving the response that it had no effect. There is no evidence in the record before the ALJ that Harris' eye condition affected his life. The ALJ met his obligation to fully develop the record regarding Harris' psychiatric and eye conditions.

C.   42 U.S.C. § 405(g), Sentence Six

As an alternative to a reversal under sentence four of 42 U.S.C. § 405(g), plaintiff urges this court to remand the case under sentence six, to allow the ALJ to consider additional evidence plaintiff acquired since the ALJ's decision. Under sentence six, the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

Plaintiff contends that evidence that she submitted to the Appeals Council justifies remanding this case under sentence six. This evidence includes records of Harris' April 2000 psychiatric hospitalization at Hartgrove Hospital. In addition, plaintiff provides information indicating that Harris had been expelled from school in early 2000 for drawing a knife on another student and that he had not entered any other school. Finally, the evidence includes a November 1999 functional vision assessment of Harris that indicated that Harris had poor depth perception and night vision as a result of his retinitis pigmentosa. This information came into existence

after the ALJ's decision, and thus is new and was not presented to the ALJ for good reason. See Sears v. Bowen, 840 F.2d 394, 399-400 (7th Cir. 1988) (finding of newness and good cause where new psychiatric report did not exist at time of administrative hearing and no evidence of attempt to "sandbag").

The remaining issue is whether this new evidence is material. New evidence is material for the purpose of a sentence six remand if there is a reasonable possibility that it would change the ALJ's decision. Sears, 840 F.2d at 400; Willis v. Apfel, 116 F. Supp. 2d 971, 976 (N.D. Ill. 2000). Here, the ALJ based his decision that Harris' psychiatric condition was not disabling largely on the April 1998 progress note by Dr. Panom that indicated that Harris was doing well at home and at school, and was not having problems at that time. He also indicated that Harris' visual impairment did not seem to have a particular impact on any functional area of his life. New evidence of a recent psychiatric hospitalization and expulsion from school would raise a reasonable possibility that the ALJ might have arrived at a different conclusion regarding Harris' long-standing psychiatric problems. In addition, a 1999 assessment of Harris' vision might be helpful in evaluating his eye condition, especially given the lack of a current evaluation at the time of the administrative hearing. Accordingly, the court finds that plaintiff's new evidence is material for the purpose of a sentence six remand.

**ORDERED:** Defendant's and plaintiff's motions for summary judgment are denied, and the case is remanded for further proceedings consistent with this order.

ENTER:

George W. Lindberg
United States District Judge

DATED: JUN 2 6 2001